**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 93-2613
Summary Calendar

In the Matter of
UNITED MARKETS INTERNATIONAL, INC.,

Debtor.

W. STEVE SMITH, TRUSTEE,

Appellee,

versus

R. DAVID LEGG,

Appellant.

Appeal from the United States District Court
for the Southern District of Texas
(CA H 92 2141)

(April 28, 1994)

Before GARWOOD, SMITH and DeMOSS, Circuit Judges.

PER CURIAM:[*]

This is an appeal of a "death penalty" sanction imposed by the
district court on appellant R. David Legg. The district court

---

[*] Local Rule 47.5 provides: "The publication of opinions that
have no precedential value and merely decide particular cases on
the basis of well-settled principles of law imposes needless
expense on the public and burdens on the legal profession."
Pursuant to that Rule, the Court has determined that this opinion
should not be published.

struck Legg's pleadings and stayed him from filing further pleadings in the action until he pays the more than $60,000 in sanctions previously entered against him. We AFFIRM.

Facts and Procedural History

This consolidated case arose from the 1985 bankruptcy of United Markets International, Inc. ("UMI") -- of which Legg is the former president and sole shareholder -- and from numerous related lawsuits and adversary proceedings involving Legg.[1] The appellee in this case is W. Steve Smith, Trustee for the UMI bankruptcy estate.[2]

After several orders to consolidate and withdraw the reference[3], three bankruptcy adversary proceedings in the UMI bankruptcy were combined into one district court case, H-92-2141 in

---

[1]For clarity, this opinion will refer to the relevant cases by docket number. Legg is an attorney who has represented himself in most of these proceedings, although he has counsel for this appeal.

[2]We note that effective December 1, 1993, the bankruptcy court granted trustee Smith's "Motion to Substitute Counsel." Because Smith left the law firm of Woodward, Hall & Primm, P.C. in late 1993, he had requested authorization to substitute the "Law Offices of W. Steve Smith" as "counsel for the trustee" in place of Woodward, Hall & Primm, P.C. This authorization was granted, and contrary to allegations raised by Legg in his Supplemental Brief, the substitution of counsel does not "moot" anything or deprive Smith of his status as trustee.

[3]In the Southern District of Texas, pursuant to 28 U.S.C. § 157(a), all cases related to a bankruptcy proceeding are automatically referred to the local bankruptcy court. However, regardless of the standing automatic reference of such matters to bankruptcy court, "the district court may withdraw ... any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Thus the term "withdrawal of the reference," as used in this opinion, means that a district court entered an order effectively transferring a bankruptcy adversary proceeding from the bankruptcy court to the district court.

2

the Southern District of Texas, from which Legg now appeals. Case H-92-2141 includes adversary proceedings 85-0375, 85-0932 and 87-0866, as well as a district court sanction in CA-88-1958.[4] Because an understanding of these and other underlying lawsuits is necessary to a disposition of this appeal, the relevant cases are summarized below:

**(1) Adversary Proceeding 85-0375, <u>Smith v. Legg:</u>** In this proceeding, Smith, the bankruptcy trustee, sued Legg on behalf of the UMI estate to recover $300,000 that Legg had transferred from UMI to himself and used to purchase a high-rise condominium. The bankruptcy court:

(a) found that Legg had breached his fiduciary duty by converting UMI's assets when UMI was insolvent with the actual intent to hinder, delay and defraud UMI's creditors;

(b) imposed a constructive trust on the condo in favor of the UMI estate;

(c) rendered judgment against Legg in favor of the UMI estate

---

[4]The lawsuit docketed as H-88-1958 was filed by Legg against trustee Smith and several other parties, alleging racketeering, tortious interference with contract and intentional infliction of emotional distress, all in connection with a purported conspiracy of all the defendants in a scheme to destroy UMI. The district court dismissed Legg's complaint, entering judgment to that effect on January 31, 1989. One year later, Legg filed a Rule 60(b) motion to vacate the final judgment. The district court denied the motion. Legg appealed to the Fifth Circuit, and on March 25, 1991, we dismissed the appeal as "frivolous," ordering Legg to pay to each appellee their reasonable costs and attorneys' fees as damages. Upon our order, the trial court fixed such damages at $5,009.00 and ordered Legg to pay such amount to Smith as trustee. The $5,009.00 sanction order has not been paid and was one of the sanctions enforced in the order now being appealed.

3

for more than $300,000;

(d) ordered Legg to turn over the condo and contents to trustee;

(e) ordered Legg to provide an accounting to the trustee for all UMI funds used by him; and

(f) found that Legg's homestead claim on the condo was subject to the estate's constructive trust.

Legg appealed, but the bankruptcy court's decision in 85-0375 was affirmed by the district court on January 31, 1992 and affirmed by this court on April 19, 1993. The reference was withdrawn in 1992 and what remained of 85-0375 -- basically the conclusion of the appeals and the enforcement of the judgment and order to account -- was consolidated into H-92-2141 (the district court case now on appeal)[5].

**(2) Adversary Proceeding 85-0932, <u>Legg v. Obaid, et. al</u>** (This case was originally filed by Legg in district court but was removed to bankruptcy court as an adversary proceeding): In this proceeding, Legg sued seven creditors of UMI, attempting to challenge the validity of the creditors' $2 million in claims against the UMI estate, and thus attempted to challenge the validity of the March 28, 1985 Order of Relief granted in the main

---

[5]The judgment of $300,000 plus interest has not been paid. Smith stated in the June 25, 1993 hearing before the trial court that, with accrued interest, "the total is in excess of $400,000 at this time." In addition, as of the June 25, 1993 hearing, Legg had not yet complied with the order to account for any money he took from UMI.

4

bankruptcy case.[6] The bankruptcy court in 85-0932 dismissed Legg's suit against the creditors and (a) held that Legg was without standing to bring such claims because they belong to the UMI estate; (b) found that Legg knew full well when he filed the claims that they were improper and unauthorized; (c) noted that all Legg's claims "appear to be wholly without merit based on evidence previously presented to this court"; and (d) sanctioned Legg more than $63,000 under Federal Rule of Civil Procedure 11 for the creditors' incurred costs and fees because the lawsuit was "interposed for the unlawful purpose of harassing [the UMI creditors], causing delay and unnecessarily increasing the costs of litigation." Legg appealed, but the bankruptcy court's decision in 85-0932 was affirmed by the district court on March 12, 1990 and affirmed by this court on June 20, 1991. On June 25, 1993, the

---

[6]The main UMI bankruptcy case, 85-00872-H2-5, was commenced on February 7, 1985 by the filing of an involuntary Chapter 11 petition by several of UMI's creditors. The creditors were granted an Order of Relief on March 28, 1985. The bankruptcy court found that Legg's attorney at the time consented to the bankruptcy court's order with Legg's knowledge and consent.

In yet another lawsuit, H-88-1706 in the Southern District of Texas, Legg attempted in 1988 to directly appeal the main bankruptcy case, claiming that the March 28, 1985 Order of Relief was a "fraud upon the Court." The district court on July 7, 1988 dismissed Legg's appeal as untimely, noting in addition that the appeal was meritless. Legg appealed to the Fifth Circuit, and on December 2, 1988, we affirmed, noting that "Legg's arguments supporting his belated appeal to the district court are so obviously without merit that we must warn him of the possibility that sanctions may be incurred if he pursues the filing of further frivolous pleadings or appeals in this court." Legg petitioned the United States Supreme Court for certiorari, which was denied.

reference was withdrawn and what remained of the case -- the enforcement of the sanctions -- was consolidated into H-92-2141 (the case now on appeal).[7]

(3) **Adversary Proceeding 87-0866, <u>Smith v. Legg</u>:** In this proceeding, the trustee Smith sought recovery from Legg of additional fraudulent transfers. Legg raised a statute of limitations defense to Smith's claims. Legg also asserted a counterclaim against Smith as trustee, seeking, *inter alia*, an accounting and claiming that the trustee appointment was void. Legg also asserted a cross-claim against Obaid, OBALCO and OTS (UMI creditors who were also defendants in Adversary 85-0932), claiming breach of a 1983 contract between OBALCO and UMI, tortious interference, emotional distress and "bad faith filing of their original involuntary [bankruptcy] petition [against UMI]." On March 30, 1989, Legg was ordered by the bankruptcy court to pay Smith $400 as a sanction for failure to comply with discovery requests. In 1992, before any of the issues in the case were resolved, the reference for Adversary 87-0866 was withdrawn and the case was consolidated into the district court case docketed H-92-2141 (the consolidated case now on appeal).

In a hearing before the district court on June 25, 1993, Legg's original answer, counterclaim and cross-claims were struck

---

[7]The $63,693.06 in sanctions -- which included $4,534.00 to Trustee Smith, $6,288.75 to Aegis Corporation and $52,870.31 to Essam Obaid, et. al., has not been paid and was one of the sanctions enforced in the order now being appealed.

by the district court as a sanction, and the court entered a written order to that effect on July 1, 1993. It is from that order that Legg now appeals.

### Events Surrounding the Striking of Legg's Pleadings

At the hearing on June 25, 1993, the trial court heard arguments from both Smith and Legg regarding Smith's "Motion For Enforcement of Court Orders."[8] After hearing arguments from both parties, the district court stated that Legg's arguments were unsupported by the record, adding that, "I certainly don't find Mr. Legg to be credible." The court granted Smith's motion to enforce the court orders, and made the following statements to Legg:

> "It's not Mr. Smith that's making unsubstantiated allegations, it's you. I think you're living in a dream world. I don't think you've got any personal claim against these people. Any claim against these people belong[s] to UMI, and that's UMI sitting right over there, the trustee. You don't have any claim against Mr. Smith. Mr. Smith is trying to do his job despite the way you have handled everything in this case."

The court denied Legg's motion for leave to file an amended counterclaim, and continued:

> "I am striking your pleadings in this case, Mr. Legg, for failing to abide by the Court's sanctions. That is, this Court, the Bankruptcy Court and the Court of Appeals."

---

[8]Smith's motion listed all the outstanding sanctions, orders and judgments against Legg and alleged that "Legg's cavalier attitude of unnecessary litigation, frivolous appeal and refusal to obey orders of this and various other courts should not be condoned." Smith moved the court to hold Legg in civil contempt, or alternatively, to dismiss Legg's counterclaim and cross-claims and deny any right of further appeal until Legg has complied with all court orders. The motion for enforcement had been on file for nearly two months before the hearing date, and Legg had ample opportunity to respond to the motion, both in writing and by oral argument to the court.

Six days later, on July 1, 1993, the court entered a written order confirming its decision: "Mr. Legg's pleadings in this matter are hereby STRICKEN for failure to pay the sanctions assessed against him. ... Mr. Legg is STAYED from filing further pleadings in this matter until all sanctions assessed against him have been paid."[9]

The main consequence of the trial court's decision to strike Legg's pleadings was an involuntary dismissal of Legg's counterclaim against Smith and his cross-claims against the UMI creditors. Legg's answer was also struck by the district court, and Legg complains on appeal that he has been denied "the right to defend himself in an action initiated against him," meaning trustee Smith's allegations from bankruptcy adversary proceeding 87-0866 that Legg had made additional fraudulent transfers of UMI assets to himself.[10] However, our examination of the record in this appeal

_____

[9]We note that in the hearing and subsequent written order, Legg was also threatened with civil contempt if he did not pay the sanctions -- or satisfy the court with proof that he was unable to pay them -- by a specified date. However, any contempt order was not made an issue on appeal and is therefore not before us. The appellate record does not reveal whether an order of civil contempt was ever issued. In the issues on appeal raised in Legg's brief (filed on October 28, 1993) as well as in the five issues listed in his separate "Statement of Issues on Appeal," filed on August 12, 1993, Legg complains only of the trial court's decision to strike his pleadings and refusal to allow him to replead until he pays the sanctions. Legg's main concern in this appeal appears to be what he calls a denial of access to the courts to pursue his claims. In all Legg's writings to this court -- including his "Supplemental Brief" filed on January 31, 1994 -- he never once raises as an issue on appeal any threat of or use of civil contempt by the district court. Therefore, we make no determination or comment in this opinion on whether civil contempt is or was appropriate in this case.

[10]Note that the "fraudulent transfer" claim in 87-0866 was separate from and in addition to the 85-0375 "fraudulent transfer" claims that were adjudged against Legg in the bankruptcy court in

satisfies us that the "fraudulent transfer" claim brought by Smith against Legg in 87-0866 (which was later consolidated into H-92-2141) was waived by Smith in open court on June 25, 1993.

Therefore, the affirmative relief awarded to trustee Smith in H-92-2141, which Legg appeals and which we affirm in this opinion, consists of:

(a) a final order enforcing the sanctions previously entered against Legg; (b) the striking of Legg's pleadings (resulting in the involuntary dismissal, or "death penalty sanction," of Legg's counterclaim against Smith and cross-claims against the UMI creditors); and (c) an order staying Legg from filing further pleadings in this action until all the sanctions against him are paid. We will review these orders for abuse of discretion.

A federal district court has both specific and inherent power to control its docket, and this includes the power to dismiss a case (or here, a counterclaim and cross-claim) as a sanction for a party's failure to obey court orders.[11] Striking a defendant's answer and denying a request to replead is equally as harsh a sanction as dismissal of a plaintiff's case with prejudice, and the

---

85-0375 and were affirmed on appeal. The older 85-0375 claims resulted in a final order to account and a money judgment against Legg; these have not been satisfied and are still in effect. (See our previous discussion of Adversary Proceeding 85-0375).

[11]Taylor v. Combustion Eng., Inc., 782 F.2d 525, 527-27 (5th Cir. 1986); see also Natural Gas Pipeline Co. v. Energy Gathering, Inc., 2 F.3d 1397, 1406-07 (5th Cir. 1993)(noting that a federal district court's power to impose sanctions for bad-faith behavior during litigation is inherent and goes beyond powers granted by specific Federal Rules of Civil Procedure), cert. denied sub nom., Fox v. Natural Gas Pipeline Co., 114 S.Ct. 882 (1994).

two sanctions are reviewed by the same standard.[12] We will uphold a district court's involuntary dismissal of a lawsuit unless the district court abused its discretion.[13] The Fifth Circuit has confined such sanctions under the district court's inherent power to instances of "bad faith or willful abuse of the judicial process."[14] We hold that Legg's behavior meets this standard.

Despite being told by court after court that his allegations were meritless and frivolous, and despite being sanctioned more than $68,000 due to his frivolous claims and appeals, Legg continued to abuse the judicial process by pursuing claims that he knew belonged to the UMI estate, claims that he has repeatedly failed to document, and/or claims that have been previously litigated, have been adjudged against him, and have been upheld on appeal. Legg's counterclaim and cross-claims that were struck by the trial court below fit into these categories. We note that the same trial judge who struck Legg's pleadings below had heard the majority of prior appeals in the UMI bankruptcy proceeding and therefore had a close familiarity with the relevant issues and the disposition of past cases involving Legg. Immediately before

---

[12]Pressey v. Patterson, 898 F.2d 1018, 1021 n.2 (5th Cir. 1990).

[13]Frame v. S-H, Inc., 967 F.2d 194, 202 (5th Cir. 1992); Price v. McGlathery, 792 F.2d 472, 474 (5th Cir. 1986)(no abuse of discretion found in involuntary dismissal of case when litigant had "a history of disobedience to this court's Orders").

[14]Pressey, 898 F.2d at 1021; See also E.E.O.C. v. General Dynamics, 999 F.2d 113, 119 (5th Cir. 1993)(noting that the "death penalty" sanction of striking pleadings is appropriate "only under extreme circumstances" such as willfulness or bad faith).

10

striking Legg's pleadings, the district court stated that Legg has no personal claim against the UMI creditors, and that if any claim exists, it belongs to the UMI estate and can only be pursued by the trustee. The court also stated that Legg had no claim against Smith as trustee. Legg's claim against Smith was based solely on a challenge to the bankruptcy Order of Relief and the order appointing Smith as trustee, both of which have been separately challenged and affirmed on appeal. Legg acknowledged in his motion for leave to replead that the adverse disposition of his many appeals has altered his standing to bring his counterclaim and cross-claims. Smith contends, and we agree, that even before Legg's claims in H-92-2141 were struck, those claims were already either moot or meritless. He has brought the same claims before court after court and has had them adjudged against him on each occasion.

We note additionally that Legg in his appellate brief attempts, again, to dredge up and re-litigate these old contentions -- for example, his own culpability for converting UMI assets (already decided in 85-0375 and affirmed on appeal), and the validity of the claims filed by the UMI creditors (85-0932 determined emphatically that Legg has no standing to bring these claims, and any new challenge to the disposition of the main bankruptcy case is untimely. See footnote 6). Legg appears to believe that if he is allowed to present these meritless claims before a jury, somehow he will be vindicated. He states in his Reply Brief that "the jury may well decide that Obaid's claims are false, that Smith has breached his fiduciary duty, and that Legg

11

has been the aggrieved party all along." Such frivolous arguments amply support the trial court's observation that Legg "is living in a dream world." We take Legg's past lack of success in the federal courts into account in assessing his credibility in the case before us. Moody v. Miller, 864 F.2d 1178, 1179 n.1 (5th Cir. 1989). Our statement describing the sanctioned litigant in Coane v. Ferrara Pan Candy Co., 898 F.2d 1030, 1034 (5th Cir. 1990), is equally applicable to Legg:

> "Like any litigant, [Legg] was entitled to his day in court. But he was not entitled to use his special skills and his knowledge as an attorney to maneuver this suit to his advantage, and to defy the orders of the court designed to advance its resolution."

Id. at 1034 (affirming involuntary dismissal sanction for attorney litigant who refused to obey court orders or pay a previously imposed sanction). Legg cannot complain of "denial of access to the courts" after he has abused the court system time and time again and has failed to comply with numerous court orders.[15] "We can ill

---

[15]The court's written order premises its decision on Legg's "failure to pay the sanctions assessed against him." However, the court at the June 25, 1993 hearing indicated to Legg that he was also being held accountable for his general pattern of behavior during the litigation surrounding the UMI bankruptcy, for example, his continuing to pursue his meritless claims and not complying with other court orders. During the hearing, in the context of striking Legg's pleadings and threatening to hold him in contempt, the judge made these statements to Legg:
"There's a judgment against you that you haven't paid";
"Mr. Smith doesn't want anything from you except an accounting";
"I want you to cooperate and give the information to Mr. Smith. If the money that was taken out of UMI was spent, tell him where it was spent. If it wasn't taken out, show him why it wasn't taken out. Isn't that simple enough? ... Let's get this thing over with."
"[It's you] that's making unsubstantiated allegations";
"I don't think you've got any personal claim against these people";
"You don't have any claim against Mr. Smith. Mr. Smith is trying to do his job despite the way you have handled everything in this

12

afford to permit litigants to waste scarce court resources with disingenuous or frivolous arguments and motions asserted purely to hinder and delay the efficient operation of justice." <u>McLeod, Alexander, Powel & Apffel, P.C. v. Quarles</u>, 894 F.2d 1482, 1487 (5th Cir. 1990)(holding that party's "bad faith and callous disregard of [his] responsibilities" justified court's striking of pleadings and entry of default judgment against him).

Legg complains that the trial court erred by striking his pleadings for failure to pay the sanctions without holding a fact-finding hearing and making written findings on the issue of Legg's financial inability to pay. Legg claims that he is too poor to pay the sanctions, and that therefore the court's order enjoining him from filing further pleadings until the sanctions are paid has "wrongly precluded Legg from access to the courts, and constituted a denial of due process." Legg's claimed inability to pay is not established in the appellate record before us, and even if it were established, that would not in all cases preclude the court's order. This Circuit has previously affirmed and employed similar sanctions against "vexatious and harassing litigants." <u>Gelabert v. Lynaugh</u>, 894 F.2d 746, 748 (5th Cir. 1990); <u>cf</u>. <u>Sassower v. Mead Data Cent., Inc.</u>, 114 S.Ct. 4, 5 (1993); <u>Day v. Day</u>, 114 S.Ct. 4, 5 (1993). In <u>Gelabert</u>, a federal district court sanctioned a prisoner litigant for court costs and further "forbade the clerk of court to accept for filing any further lawsuits on behalf of Plaintiff until the sanction is satisfied." Gelabert complained

_____

case."

13

that he was too poor to pay the sanction and would never be able to pay it as long as he remained in prison. We affirmed, holding that inability to pay is no reason to overturn the sanction:

> "Like any other pastime, recreational litigation has its price; such sanctions as this are imposed for the very purpose of causing the would-be pro se prisoner litigant, with time on his hands and a disposition to retaliate against the system, to think twice before cluttering our dockets with frivolous or philosophical litigation."

Gelabert, 894 F.2d at 748; See also Moody v. Miller, 864 F.2d 1178, 1179 n.2 (5th Cir. 1989)(noting Fifth Circuit's decision to prohibit frivolous litigant "from prosecuting any more IFP appeals, absent certification of his good faith by the district court, until he paid the sanctions in six of these cases."). If Legg is insolvent as he claims, then additional monetary sanctions will not be effective against him, and he has no incentive to refrain from pursuing his frivolous counterclaim and cross-claims and forcing his opponents to incur greater and greater legal fees and costs. The court's order precluding further pleadings until the sanctions are paid is appropriate in this context.

> "Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender."

Waffenschmidt v. Mackay, 763 F.2d 711, 716 (5th Cir. 1985), cert. denied sub nom., Currey v. Waffenschmidt, 474 U.S. 1056 (1986).

We therefore AFFIRM the district court's order striking Legg's pleadings and staying Legg from filing further pleadings in this action until he pays the sanctions previously entered against him.

14

The following is a list of the sanctions Legg must pay before the stay will be lifted:[16]

(1) $400.00, ordered by the bankruptcy court in Adversary Proceeding 87-0866 on March 30, 1989;

(2) $4,534.00, ordered by the bankruptcy court in Adversary Proceeding 85-0932 on February 14, 1989;

(3) $6,288.75, ordered by the bankruptcy court in Adversary Proceeding 85-0932 on February 14, 1989;

(4) $52,870.31, ordered by the bankruptcy court in Adversary Proceeding 85-0932 on February 14, 1989;

(5) $5,009.00, ordered by a district court in Civil Action H-88-1958 on December 6, 1991.

Smith urges us to take further action against Legg, arguing that a court may structure the sanctions necessary or warranted to control its docket, to maintain the orderly administration of justice or to enforce its orders, and he cites Vinson v. Heckmann, 940 F.2d 114, 116-17 (5th Cir. 1991). In Vinson, we affirmed the dismissal of a 42 U.S.C. § 1983 suit found to be frivolous by the district court. Id. at 115. In addition, we noted that Vinson, like Legg in this case, had been warned and sanctioned both by district courts and appellate courts on numerous occasions because his filings were frivolous, and that Vinson had been warned that more severe sanctions would be imposed if he filed any more frivolous actions. We then sua sponte ordered a more stringent sanction on

---

[16]We note that there may be other sanction orders, judgments and orders to pay costs now existing and in effect against Legg. Our opinion today does not alter Legg's already existing obligation to obey orders issued by any court or to pay any judgments or sanctions that might be outstanding. The sanctions listed herein, however, are those that we can identify as being referred to by the district court order which we affirm in this opinion.

Vinson, directing all trial and appellate courts within our supervisory jurisdiction to decline acceptance of any filing by Vinson unless he obtained specific pre-authorization by a judge of the forum court. Id. at 116-17.

We decline at this time to extend Vinson-type sanctions to Legg in this appeal, but we take this occasion to warn Legg that any future frivolous claims and appeals filed by him or on his behalf will be met with that remedy.

TRIAL COURT ORDER AFFIRMED.