# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

———————————

m 01-20914
Summary Calendar

———————————


NELDA HOLDEN; ET AL.,

Plaintiffs,

NELDA HOLDEN,

Plaintiff-Appellant,

VERSUS

SIMPSON PAPER COMPANY; ET AL.,

Defendants,

SIMPSON PASADENA PAPER COMPANY; PASADENA PAPER COMPANY, L.P.,

Defendants-Appellees,


———————————————

Appeal from the United States District Court
for the Southern District of Texas
m H-00-CV-1363
m H-00-CV-2100

———————————————

September 18, 2002

Before JONES, SMITH, and
    EMILIO M. GARZA, Circuit Judges.

    JERRY E. SMITH, Circuit Judge:[*]

    Nelda Holden sued Simpson Paper Company ("Simpson") for unlawful discharge. In this litigation, she repeatedly refused to comply with the district court's orders to pay costs assessed against her in a 1995 lawsuit against Simpson. After Holden disobeyed its second order to compel costs, the court dismissed her new suit with prejudice for failure to comply with orders, enjoined her from filing any other suits in the Southern District of Texas without court approval, and fined her an additional $1,000. Concluding that Holden's deliberate disobedience of multiple court orders brought these sanctions within the district court's discretion, we affirm.

I.

    In October 1995, Holden sued Simpson for unlawful discrimination. *Holden v. Simpson Pasadena Paper Co.*, No. H-95-4989. In May 1997, the court granted Simpson's motion for summary judgment and entered a final order of dismissal. The next month, the court assessed $3,993.98 in costs, which Holden did not pay.

    In April 2000, Holden brought the instant suit against Simpson, Pasadena Paper Company, and various other entities. In August 2000, Simpson informed the court of the outstanding costs, whereupon the court issued an order compelling Holden to pay Simpson "the $3,993.98 taxed against her in H-95-4989." Simpson mailed three letters to Holden's trial

counsel, Harold Dutton, to attempt recovery of the costs. By the end of 2000, however, neither Holden nor her attorney had contacted Simpson about paying the debt or otherwise complying with the order.

    In January 2001, Simpson filed a motion notifying the district court of Holden's noncompliance, explaining its attempts to contact her attorney. That month, the court issued its second order directing Holden to negotiate a payment plan with Simpson for the costs imposed in the first suit. When Holden explained that she could not afford to pay, Simpson offered to permit her to pay the debt in monthly, interest-free installments of $114 and prepared a promissory note to that effect. Holden made only two payments of $114 and refused to sign the promissory note.

    In July 2001, Simpson filed another notice of Holden's non-compliance and suggested the imposition of further sanctions, whereupon the court ordered her to appear to explain her noncompliance. The court promptly held a hearing and concluded that Holden had no reasonable basis for refusing to pay. Although Holden explained she had been unable to obtain work, she also stated that she had used a lump sum severance payment to pay off the note on her house, and the court concluded she had not looked for work diligently.

    The court entered three sanctions: (1) It dismissed the instant suit; (2) it entered what the parties have styled a preclusion order, barring Holden from filing another suit in the Southern District of Texas "without the court's written permission in advance"; and (3) it ordered her to pay an additional $1,000 in sanctions to Simpson Pasadena Paper Company. During the hearing, the court described the first two orders as "infinitely reviewable,"

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

and explained that it would consider vacating those orders if she paid the costs in full. In January 2002, the court entered an order certifying the dismissal and preclusion orders for appeal under FED. R. CIV. P. 54.

## II.

Holden relies on our cases describing the standards for dismissal under FED. R. CIV. P. 41 for failure to prosecute. Rule 41, however, also gives courts the power to dismiss for deliberate and flagrant disobedience of court orders. Such dismissals are presumed to be with prejudice.[1]

To dismiss with prejudice for disobedience, the court must find that (1) the plaintiff deliberately or contumaciously refused to comply with (2) multiple or repeated court orders (3) despite the imposition of lesser

---

[1] Rule 41(b) provides:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication on the merits.

FED. R. CIV. P. 41(b). Although the text of rule 41(b) suggests the defendant needs to move for dismissal, district courts have the inherent power to raise the possibility of dismissal *sua sponte*. *Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962) (failure to prosecute); *Martinez v. Johnson*, 104 F.3d 769, 772 (5th Cir. 1997) (disobeying court order).

sanctions. *Long v. Simmons*, 77 F.3d 878, 880 (5th Cir. 1996).[2] A dismissal with prejudice is "an extreme sanction that deprives the litigant of the opportunity to pursue his claim." *Callip*, 757 F.3d at 1519 (citation and internal quotation omitted). We review such a dismissal for abuse of discretion. *Long*, 77 F.3d at 879.

Simpson met its required burden of proving that Holden had knowingly and deliberately disobeyed the court orders.[3] Holden argues

---

[2] In the line of cases describing dismissals for failure to prosecute, we have considered other aggravating factors, such as whether the plaintiff or attorney caused the delay, the delay prejudiced the defendant, or the attorney acted intentionally. *Callip v. Harris County Child Welfare Dep't*, 757 F.3d 1513, 1519 (5th Cir. 1985). It is uncertain whether these same aggravating factors apply to a dismissal for a party's refusal to obey court orders. We do not need to reach the question, because the boilerplate test adequately measures many of these factors and justifies the dismissal.

[3] *Connolly v. Papachristid Shipping, Ltd.*, 504 F.2d 917, 920 (5th Cir. 1974) (reversing rule 41(b) dismissal because noncompliance appeared inadvertent rather than deliberate); *Council of Federated Org. v. Mize*, 339 F.2d 898, 900 (5th Cir. 1964) (reversing because "it must be inferred from the record that counsel for the plaintiffs misunderstood the district court's order . . . and their absence was not willful or in bad faith"); 8 JAMES WM. MORE ET AL., MOORE'S FEDERAL PRACTICE § 41.53, at 203-04 (3d ed. 2002) ("[T]he district court need only find that a party acted deliberately rather than accidently, and need not find bad faith."). *See Bonaventure v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979) (interpreting FED. R. CIV. P. 37(b) to permit dismissal where party repeatedly and deliberately refused to appear for deposition); *Durgin v. Graham*, 372 F.2d 130,
(continued...)

3

that because we have most commonly upheld involuntary dismissals for unjustified delays and excessive, frivolous, and abusive litigation, those are the exclusive grounds for proving wilfulness or bad faith under rule 41(b). Most of those cases, however, considered dismissals for failure to prosecute.[4]

Rule 41(b) makes ignoring a court rule or order a separate ground for involuntary dismissal. And it is difficult to imagine how a plaintiff can disobey a court order more willfully or in worse faith than when she has knowledge of the order and deliberately disobeys it. Holden fails to articulate a coherent, competing standard that would validate her conduct,[5] but merely invokes the

buzzwords "bad faith" and "wilfulness," which have no meaning in a vacuum.

The district court had little difficulty concluding that Holden had deliberately disobeyed the order. After June 1997, the order imposing costs should have placed Holden on notice. Simpson's subsequent and repeated attempts to contact her went ignored. By the time of the sanctions hearing, the court had twice ordered her to pay the outstanding costs.

At the sanctions hearing, Holden never even tried to argue that she misunderstood her legal obligations in 1997. Despite understanding those obligations, she failed to satisfy them over a period of four years. The record evidence overwhelmingly demonstrates her deliberateness.

To support its dismissal, the district court pointed to a series of court orders that Holden had ignored for over four years. The district court cannot dismiss for a plaintiff's isolated failure to comply with a single order; minor infractions are not enough.[6] We have affirmed

---

[3](...continued)
131 (5th Cir. 1967) (same).

[4] In this portion of her brief, Holden cites cases with only tangential relevance. *E.g.*, *Smith v. Legg* (*In re United Markets Intn'l, Inc.*), 24 F.3d 650, 654 (5th Cir. 1994) (affirming sanction of over $60,000 based on frivolous claims and appeals); *Natural Gas Pipeline Co. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411-12 (5th Cir. 1993) (finding that attorney acted in bad faith by deliberately disobeying court orders, but vacating sanction compelling him to turn over personal tax records because it lacked relation to his misconduct and intruded on his personal privacy); *EEOC v. Gen. Dynamics Corp.*, 999 F.2d 113, 119 (5th Cir. 1993) (reversing sanctions for failure to comply with discovery orders because district court did not find that attorney had acted deliberately or wilfully); *Gelabert v. Lynaugh*, 894 F.2d 746, 747-48 (5th Cir. 1990) (affirming dismissal of claim for frivolous and abusive litigation).

[5] Holden does not argue that the failure to pay was her attorney's fault. We usually do not punish parties for counsel's mere negligence or in-
(continued...)

[5](...continued)
advertence. District courts may use a dismissal with prejudice to punish an attorney's negligence only in "extreme and unusual circumstances." *Hassenflu v. Pyke*, 491 F.2d 1094, 1095 (5th Cir. 1974).

[6] *E.g.*, *Neal v. IAM Local Lodge 2386*, 722 F.2d 247, 249 (5th Cir. 1984) (reversing dismissal for missing "one of these deadlines by a few days"), *overruled on other grounds*, *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 (1984); *Houston Citizens Bank & Trust Co. v. Dolleslager* (*In re Dolleslager*), 618 F.2d 322, 326 (5th Cir. 1980) (reversing dismissal for failure to obey single pretrial order requiring
(continued...)

dismissals, however, where the plaintiffs have failed either to comply with a series of court orders[7] or comply with a single court order despite many opportunities to do so.[8]

The instant case falls squarely into the latter category. Holden disobeyed at least three orders to pay the costs over a period of four years. Her disobedience was grave enough to warrant dismissal with prejudice.

A district court must at least consider and reject less drastic measures. *Hornbuckle v. Arco Oil & Gas Co.*, 732 F.2d 1233, 1237 (5th Cir. 1984). In most cases, the court should attempt to use less severe sanctions before resorting to involuntary dismissal. *Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894, 898 (5th Cir. 1997); *McNeal v. B.H. Papasan*, 842 F.2d 787, 793 (5th Cir. 1988). If those measures would be ineffective, however, the court may involuntarily dismiss with prejudice.[9]

Here, the court settled on dismissal as the only sanction likely to be effective. In doing so, the court exercised sufficient patience. Holden's refusal to pay costs from the first suit limited the disciplinary options; the court reasonably expected that Holden would simply ignore monetary fines. The court gave her several opportunities to comply. In all, the two district courts gave Holden three opportunities to comply with the initial assessment of costs.

When Holden failed to pay those costs, the court was not limited to dismissing without prejudice. Warnings give the district court latitude to dismiss with prejudice, *Callip*, 757 F.2d at 1521-22, and doing so was well within the court's discretion.

In at least three cases, we have considered involuntarily dismissals based on failure to pay

---

[6](...continued) amendment of complaint); *Wrenn v. Am. Cast Iron Pipe Co.*, 575 F.2d 544, 546 (5th Cir. 1978) (finding that failure to pay partial filing fee despite otherwise diligent prosecution should not justify dismissal), *overruled on other grounds*, *Baldwin County Welcome Ctr.*, 466 U.S. at 149-50.

[7] *E.g., Dorsey v. Scott Wetzel Servs., Inc.*, 84 F.3d 170, 172 (5th Cir. 1996) (affirming dismissal for failure to file joint pretrial order, failure to appear at docket call, failure to be set for trial, and tardily designating expert); *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1192 n.6 (5th Cir. 1992) ("[W]here a plaintiff has failed to comply with several court orders or court rules, we have held that the district court did not abuse its discretion . . . .") (collecting cases).

[8] *E.g., Larson v. Scott*, 157 F.3d 1030, 1032 (5th Cir. 1998) (affirming dismissal with prejudice where prisoner plaintiff ignored order to file statement of trust account and ignored subsequent warning that failure to comply would result in dismissal); *Martin-Trigona v. Morris*, 627 F.2d 680, 682 (5th Cir. 1980) (affirming dismissal where plaintiff failed to respond to motion to dismiss over a period of thirteen months despite three orders to do so); *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991) (finding that district court properly dismissed complaint for failure to comply with service order because court gave instructions and opportunity to correct faulty service).

[9] *Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154 (5th Cir. 1985) ("When lesser sanctions have proved futile, a district court may properly dismiss a suit with prejudice.") (citation and quotations omitted); *Callip*, 757 F.2d at 1521 (explaining that providing the plaintiff with second and third chances to comply with order counts as a lesser sanction).

costs assessed in an earlier case. In *Duchardt v. Ewing*, 571 F.2d 869, 870-71 (5th Cir. 1978), we reversed an automatic, involuntary dismissal where the plaintiff had attempted to challenge the costs in the first case but used the wrong procedural vehicle. We classified the dismissal sanction as too harsh where the plaintiff did not have an opportunity to articulate his reasons for defeating cost recovery. *Id.* In *Gelabert*, 894 F.2d at 748, however, we affirmed an involuntary dismissal with prejudice where an overly litigious plaintiff had failed to pay a $10 fine from an earlier case. In *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1999), we affirmed an involuntary dismissal without prejudice for the plaintiff's failure to comply with other courts' sanctions orders. Emphasizing the plaintiff's history of frivolous litigation, we noted that one court could validly enforce other courts' orders with the sanction of involuntary dismissal. *Id.* at 1067-68. Neither *Gelabert* nor *Balawajder* cites or considers Duchardt.

We interpret *Duchardt* as limited to cases in which the plaintiff asserts that the first court shifted costs only because the plaintiff had made a procedural error *and* the second court did not give the plaintiff an opportunity to explain or comply before dismissal. In *Duchardt*, although we did not spell out the insufficiency, the district court violated one of our traditional requirements for a rule 41(b) dismissal. As early as 1976, we had vacated a decision for failing to consider thoroughly less severe sanctions. *Boazman v. Economics Lab., Inc.*, 537 F.2d 210, 213-14 (5th Cir. 1976).

In *Duchardt*, the district court automatically dismissed without considering lesser sanctions or warning the plaintiff. We imposed this requirement to avoid precisely the risk we described as acute in *Duchardt.*

Without more lenient sanctions and an opportunity to respond, the plaintiff never had the opportunity to explain that the first court assessed costs only because of his procedural error. The dismissing court, therefore, could never consider the severity of the plaintiff's disobedience in the context of the first court's substantive reasons for shifting costs.

By contrast, in this case the dismissing court displayed great patience and considered Holden's arguments against dismissal. The court not only issued a new order compelling payment, but, when Holden failed to comply with that order, the dismissing court issued a second order. Only after Holden failed to comply with that second order did the court order a hearing to consider further sanctions.

At that hearing, Holden argued only that she did not have the ability to pay. She admitted, however, that she had received a severance payment after the assessment of costs and used the money to pay off her house note. She also admitted that she had refused to negotiate a reasonable regular payment plan with Simpson despite their repeated attempts to contact her.

The court certainly could have concluded that Holden had the money to pay the costs and that she had no valid objection to the original order. Because Holden received adequate notice and an opportunity to explain, this case differs fundamentally from *Duchardt*. Instead, we rely on our general caselaw governing rule 41(b) dismissals, *Gelabart*, and *Balawajder*. All of these sources point toward affirming the involuntary dismissal.

## III.

The district court also imposed a $1,000 sanction. At the hearing, the court appeared

to base its sanction on the costs generated by Holden's refusal to pay the original costs assessed in 1997. Because Holden did not voluntarily dismiss her 1995 suit, rule 41(d) did not authorize the sanction.[10] We have held, however, that district courts have the inherent power to sanction litigants for abusive conduct.[11] We review the exercise of those inherent powers for abuse of discretion. *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

Holden essentially repeats the argument she made for reversing the dismissalSSbad faith is required, and she did not act in bad faith. Once again, she cites cases involving frivolous or repetitive litigation and assumes that is the only example of litigants abusing the litigation procedure in bad faith. She is wrong.

---

[10] Rule 41(d) shifts costs for lawsuits dismissed by the plaintiff and later recommenced:

> If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

FED. R. CIV. P. 41(d).

[11] *Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 952 (5th Cir. 2001) ("When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent powers to impose sanctions.") (citation and quotations omitted); *Natural Gas Pipeline*, 2 F.3d at 1407 (same).

Deliberately disobeying court orders demonstrates sufficient bad faith to justify a district court's sanction under its inherent powers. In *Toon*, 250 F.3d at 953-54, we affirmed a $15,000 sanction where an attorney had ignored an order to file a motion under seal. In *Natural Gas Pipeline*, 2 F.3d at 1409-11, we labeled an attorney's bald refusal to comply with three court orders to turn over documents as "bad faith." The repeated refusal to comply with court orders demonstrates "bad faith" and amply supports the sanctions awarded in this case.

Finally, Holden argues that she does not have the money, and the district court should have been sensitive to her *in forma pauperis* status. A litigant's poverty should not make him immune to the courts' discipline. Monetary fines mean less to insolvent defendants, making them less effective for deterring abuse of the judicial system. *In re Sindram*, 498 U.S. 177, 179-80 (1991) (explaining diminished deterrent effect on *pro se* prisoners). We will not limit the scope of courts' inherent powers over these defendants in a way that will exacerbate the problem.

For those reasons, we have previously held that a litigant's *in forma pauperis* status does not automatically shield him from sanctions for abusing the litigation process. *In re United Markets Int'l*, 24 F.3d at 855-56*; Gelabert*, 894 F.2d at 748. The Supreme Court has similarly interpreted the *in forma pauperis* statute not to include waiver of filing fees for frivolous or abusive suits.[12]

---

[12] *E.g.*, *Demos v. United States District Court* (*In re Demos*), 500 U.S. 16, 17 (1991) ("Petitioner has abused the system, and we find it appropriate to deny leave to proceed *in forma pauperis* to
(continued...)

Holden has not presented record evidence that her impoverished status should justify reversing the sanctions for her admitted misbehavior. The district court's orders reflected that she only needed to *begin* paying the costs. Simpson attempted to arrange a monthly, interest free payment plan. Holden refused to sign a promissory note memorializing the payment plan and stopped making payments without notice or explanation.

In the face of these accommodations, Holden at least had an obligation to bring her financial circumstances to the attention of either Simpson or the court and negotiate a new payment plan. She did not do so, and the court had the discretion to sanction her harshly for her pattern of contumacious conduct.

AFFIRMED.

---

[12](...continued)
petitioner in these two petitions for extraordinary relief . . . and in all future petitions for extraordinary relief."); *In re McDonald*, 489 U.S. 180, 184 (1989) (suspending *in forma pauperis* status for all future writ applications because of past abuses).