# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 6, 2011

Lyle W. Cayce
Clerk

No. 09-30829

OCEAN-OIL EXPERT WITNESS, INC.,

Plaintiff-Appellee,

versus

ASHTON O'DWYER,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:07-CV-3129

Before SMITH, BARKSDALE, and BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Ashton O'Dwyer, *pro se*, appeals a default judgment granted to Ocean-Oil

Expert Witness, Inc. ("Ocean-Oil"), after his answer was stricken as a contempt

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sanction. Because the use of inherent power was appropriate in light of O'Dwyer's bad faith and wilful abuse of the judicial process, we affirm.

## I.

O'Dwyer was a New Orleans attorney who obtained the services of Hector Pazos, a marine engineer, in connection with claims his clients made relating to Hurricane Katrina. O'Dwyer was later suspended in disciplinary proceedings, presided over by United States District Judge Ivan Lemelle, and eventually was disbarred.[1] As a result, several cases in which he was acting as plaintiff or counsel for plaintiffs were administratively closed or stayed. Additionally, he was prohibited from filing anything in that district other than notices of appeal until he paid his monetary sanctions and was permitted to file papers again by a judge in the district.[2]

After making the first and part of the second payment to Ocean-Oil, O'Dwyer did not make any further payments. Ocean-Oil sued him for the outstanding balance of $90,831.57.

The district court held a Federal Rule of Civil Procedure 16 scheduling conference by telephone to select new pretrial and trial dates after the initial dates had to be pushed back because of various delays.[3] During that conference, O'Dwyer asked for permission to object to the trial's going forward. The court explained that it would not take oral motions or objections and would respond only to written filings. O'Dwyer then had the following exchange with the court:

---

[1] Order of Disbarment, *In re O'Dwyer*, No. 08-5170 (E.D. La. 2008).

[2] Order on Motion for Miscellaneous Relief, *In re O'Dwyer*, No. 08-1492 (E.D. La. 2008).

[3] The first delay occurred when Ocean-Oil was unable to obtain Federal Rule of Civil Procedure 26 disclosures from O'Dwyer. Initially, the magistrate judge imposed Federal Rule of Civil Procedure 37 discovery sanctions on O'Dwyer for failing to comply with the order to compel such disclosures, but the court found that the failure to comply was not intentional, so it set aside the sanctions. After that, the trial had to be postponed further, because the date conflicted with a major criminal trial.

No. 09-30829

MR. O'DWYER: I'm precluded from doing anything in writing.

THE COURT: Not in this case. Not in this case. Not in this case, sir. Not in this case.

MR. O'DWYER: Well, that's a double standard that you're applying to me, and I would think that you of all people would know what I'm talking about.

THE COURT: You want to yell a little louder? As I said before—

MR. O'DWYER: Screw you.

*Id.* After his final comment, O'Dwyer hung up the phone, and Ocean-Oil's attorney finished scheduling the pretrial conference and trial.

After the conclusion of the scheduling conference, the court ordered O'Dwyer to show cause why he should not be summarily held in direct contempt of court. O'Dwyer responded in writing by arguing that electronic service of the show-cause order was improper, that he was entitled to an evidentiary hearing before the court made a summary contempt determination, that the show-cause order did not specify the facts and allegations constituting the contempt or whether the contempt was civil or criminal, and that he had a right to express himself under the First Amendment. He also requested that Judge Lemelle, along with all other members of the Eastern District of Louisiana bench, be recused from cases involving him. He accused the court of already having decided he was guilty, of having improper *ex parte* communications, and of being guilty of judicial misconduct, and claimed that Judge Lemelle "is worthy of the contempt of *all* United States citizens, and . . . should never have been confirmed as a judge by Congress, because he is (1) INCOMPETENT and (2) CORRUPT, and unworthy of the respect of educated, free men."

The court rejected those responses, giving reasons why it chose to overrule each objection, and ordered O'Dwyer to (i) file an unconditional apology to the court, his counsel, opposing counsel, and the court reporter using language the

court provided, (ii) pay a $1,000 fine, and (iii) obtain anger management counseling. The order concluded by warning O'Dwyer that failure to satisfy the punishment terms or to seek a good-cause extension would result in more severe sanctions, including "striking his pleadings and/or rendering a judgment by default against him . . . ."

O'Dwyer did not comply with the order; instead, he wrote to the court that he said "screw you" to Judge Lemelle as a man rather than as a judge, after the court's business had concluded. O'Dwyer continued that it was ironic that this judge was biased and prejudicial toward him, by allowing a suit where he was the defendant to proceed while suits in which he was a plaintiff were stayed, because, "as a Negro, Lemelle undoubtably has suffered bias, prejudice and unfair treatment . . . ." Moreover, O'Dwyer declared he did not owe anyone an apology, but rather he was himself owed an apology from the court. Additionally, he professed to lack the money to pay the fine. Finally, he reiterated that the judge was incompetent and corrupt and concluded by telling him "(as a man; not as a judge) 'screw you!'"

After receiving this writing, the court, based on the initial phone call and supplemented by the repeated disrespect to the court following that incident, struck O'Dwyer's answer. It then entered a default judgment for Ocean-Oil for $200,000, covering the outstanding balance, interest, costs, and attorney's fees.

II.

O'Dwyer argues that Judge Lemelle should have recused himself from sitting in this case because of his personal bias against O'Dwyer. We review a denial of a motion to recuse under an abuse-of-discretion standard. *Crawford v. United States Dep't of Homeland Sec.*, 245 F. App'x 369, 383 (5th Cir. 2007).

A judge is disqualified for bias or prejudice only where bias comes from an extrajudicial source and results in an opinion based on something besides what the judge learned in the case at hand. *United States v. Grinnell Corp.*, 384 U.S.

No. 09-30829

563, 583 (1966). Thus, rulings in previous cases will almost never form a sufficient basis for bias, *Liteky v. United States*, 510 U.S. 540, 555 (1994), unless they show such substantial antagonism that a fair judgment is impossible, *United States v. Scroggins,* 485 F.3d 824, 830 (5th Cir. 2007). Additionally, a judge can be disqualified if it would appear to an objective observer that he will not be impartial, meaning a reasonable person, who knew all the circumstances, would doubt his impartiality. *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1165 (5th Cir. 1982).

O'Dwyer claims several events show bias: (i) the fact that the judge presided over O'Dwyer's previous disciplinary hearing; (ii) the refusal to stay this proceeding while all proceedings in which O'Dwyer was a plaintiff or represented plaintiffs were stayed; (iii) the fact that O'Dwyer sued all the judges in the district, including Judge Lemelle; and (iv) the decision in *In re High Sulphur Content Gasoline Products Liability Litigation*, 517 F.3d 220 (5th Cir. 2008), shows the judge is biased against O'Dwyer because of the judge's close relationship with lawyers and other judges whom O'Dwyer accused of misconduct. None of these is sufficient to demonstrate that the denial of the motion to recuse was an abuse of discretion.

Although Judge Lemelle presided over disciplinary proceedings against O'Dwyer, nothing indicates those proceedings prejudiced O'Dwyer here. The judge's decisions in the disciplinary matters were intrajudicial, rather than extrajudicial, so they do not require recusal unless they show such substantial antagonism that a fair judgment is impossible. *Scroggins*, 485 F.3d at 830.

Nothing in the record of the disciplinary proceedings suggests Judge Lemelle developed any such enmity toward O'Dwyer during those proceedings. In fact, the en banc court of the Eastern District of Louisiana found that "there [was] absolutely nothing in the record to suggest [biased] conduct by Judge Lemelle. If anything, he bent over backwards to ensure that O'Dwyer received

5

a fair hearing."[4] Thus, the disciplinary proceedings did not evince a "deep-seated favoritism or antagonism that would make fair judgment impossible." *See Liteky*, 510 U.S. at 555.

O'Dwyer's citation to Federal Procedure, Lawyer's Edition, is not to the contrary. That text indicates that a judge should be disqualified from sitting on a case involving an attorney if he in the past tried to have that attorney disbarred, because "protracted prosecutorial pursuit of the attorney may so entangle him in matters involving the attorney as to indicate that he may be biased." Lawyer's Co-operative, Federal Procedure: Lawyer's Edition § 20:131 (Thomas J. Goger ed. 2005). Judge Lemelle did not engage in a "protracted prosecutorial pursuit" of O'Dwyer; he was merely the judge presiding over the disciplinary hearing. The chief judge of the Eastern District of Louisiana, Judge Berrigan, initiated the proceedings, based on actions that had occurred before Judge Duval. Judge Lemelle was neither the target of the conduct for which O'Dwyer was disciplined nor the one seeking to punish for that conduct. He was merely the impartial arbiter of the hearing, who, as discussed above, accomplished that task in an unbiased fashion.

Next, O'Dwyer argues that Judge Lemelle demonstrated bias by proceeding with this case, in which O'Dwyer is a defendant, while cases in which he was a plaintiff were stayed. That is similarly unavailing. Judge Lemelle heard arguments regarding whether this case should be stayed and determined that a stay would prejudice Ocean-Oil. The stay in O'Dwyer's cases arose from the disciplinary proceedings against him. When he is acting as a plaintiff, that stay has a detrimental effect on him, because he is unable to collect in his lawsuits if he is successful. But staying this case, where he is a defendant, would prevent Ocean-Oil from recovering any money it is due, punishing an uninvolved party because O'Dwyer was disciplined. Ocean-Oil should not suffer for any mistakes

---

[4] Order on Motion for Miscellaneous Relief at 14, *In re O'Dwyer*, No. 08-1492 (E.D. La. 2008).

O'Dwyer may have made. As a result, the district court did not demonstrate bias by refusing to stay this case.

Suing all the judges in a district indiscriminately also does not force their recusal. Judges are not required to recuse just because they have been or are involved in litigation with a party.[5] Otherwise, parties could control which judges hear their case by filing lawsuits against all judges of whom they disapproved. Courts must take care to ensure that motions for recusal are not abused as a litigation tactic. *Sensley v. Albritton,* 385 F.3d 591, 598 (5th Cir. 2004). O'Dwyer sued all active judges in the district after independent counsel was not appointed to investigate the matter of his disciplinary hearing in an attempt to force appointment of such counsel.[6] Such a generalized suit against all the judges cannot require their recusal, both because it is not likely to succeed[7] and because the judges do not stand to suffer negative repercussions where the only relief sought is to have independent counsel appointed.

Finally, *High Sulphur* is immaterial. There, the court had appointed a committee of five plaintiffs' attorneys to allocate a fee award among the various plaintiffs' attorneys. The committee made a recommendation to Judge Lemelle, which he accepted, then he placed the documents prepared under seal, issued a gag order regarding each plaintiffs' attorney's fee, and ordered the money distributed immediately. This court overturned that order, because there was not enough court oversight in scrutinizing the fee committee's recommendation and because both gag orders and sealing the record are inappropriate in such situations. O'Dwyer played no role in that litigation, and nothing there suggests

---

[5] *United States v. Sutcliffe*, 505 F.3d 944, 958 (9th Cir. 2007); *Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006); *In re Taylor*, 417 F.3d 649, 652 (7th Cir. 2005); *United States v. Grismore*, 564 F.2d 929 (10th Cir. 1977).

[6] *See* Order on Motion for Miscellaneous Relief at 2-3, *In re O'Dwyer*, No. 08-1492 (E.D. La. 2008).

[7] The proper channel to contest such an adverse ruling is on appeal, not though a separate lawsuit seeking an injunction against the court's actions.

Judge Lemelle will display bias against O'Dwyer. Because none of O'Dwyer's alleged grounds is sufficient to require recusal, the court did not abuse its discretion in refusing to recuse.

## III.

Once the district court struck O'Dwyer's answer, default judgment naturally followed, so the question is whether striking was appropriate. O'Dwyer contests three features of the sanctions: (i) He did not receive proper notice of the allegations and criminal nature of the contempt; (ii) a different judge should have been called to preside over the contempt hearing; and (iii) the sanction of striking his pleading and issuing a default judgment was inappropriate. This case is properly analyzed as two separate instances of punishment: one in which O'Dwyer was punished for screaming "screw you" at the court and a second in which the punishment was increased for failure to satisfy the requirements of the first punishment and the manner of O'Dwyer's refusal to do so.

## A.

First, the court held O'Dwyer in direct contempt using the summary contempt procedures in Rule 42(b) of the Federal Rules of Criminal Procedure. Summary disposition is available whenever a judge can certify that he saw or heard the conduct that constitutes contempt and that conduct was done in the actual presence of the court. *United States v. Wilson*, 421 U.S. 309, 314-15 (1975). These procedures allow a judge summarily to punish someone who commits criminal contempt in the court's presence if the judge saw or heard the contemptuous conduct, without a full hearing, *see* Rule 42(b), although this court still requires at least notice and a brief opportunity for the contemnor to be heard. *United States v. Brannon*, 546 F.2d 1242, 1249 (5th Cir. 1977). Also, despite the breadth given by the rule's wording, when time is not of the essence, non-summary procedures should be used. *Wilson*, 421 U.S. at 319. Summary

procedures are meant for situations in which immediate corrective steps must be taken to restore order and maintain the dignity and authority of the court. *Farmer v. Strickland*, 652 F.2d 427, 437 (5th Cir. Unit B Aug. 1981). The circuit courts of appeals are charged with the task of making sure the power of summary disposition is not abused. *Wilson*, 421 U.S. at 319.

Regarding this first contempt sanction, the summary contempt procedure was not improperly used. O'Dwyer shouted "Screw you" at the court and hung up during a Rule 16 conference that took place on a phone call among both parties and the court. Because the comment was shouted at the court, the judge heard the contemptuous conduct. Although the conference was conducted by phone, it is still a direct proceeding with the court, as part of the business in that case, and so conduct occurring during a judicial proceeding over telephone qualifies as conduct before the court.

Finally, it was not an abuse of discretion for the judge to determine that immediate action was needed to maintain the dignity and authority of the court and to restore order to the proceedings. *See Farmer*, 652 F.2d at 437. Shouting "screw you" at the court during a judicial proceeding does impact the dignity and authority of the court, and if one party is willing to disrupt proceedings when he becomes upset at an action the court takes, such as by hanging up the phone here, it can inhibit the progress of the matter. Therefore, taking immediate action through the summary contempt power was not an abuse of discretion.

Though Rule 42(b) does not require notice or hearing, this circuit requires notice and a brief opportunity to be heard in summary contempt proceedings. Those requirements were met. O'Dwyer objected that there was insufficient description of the facts for which he was being charged with contempt and that the order did not specify it was criminal contempt. He was ordered to show cause for shouting "screw you" at the court and hanging up during the conference. This provides sufficient notice of the facts for which he was threatened with contempt. He was given the opportunity to respond in writing by the show-

cause order, and he did file a response to the order.

Additionally, an order to show cause that just says "contempt" without specifying civil or criminal can be adequate notice the contempt is criminal if the behavior the contemnor is charged with could only be remedied by punitive sanctions. *Am. Airlines, Inc. v. Allied Pilots Ass'n,* 968 F.2d 523, 530-31 (5th Cir. 1992). Here, the improper behavior had already occurred, so only punishment, rather than coercion, would be applicable. O'Dwyer cannot be coerced not to have made the comment or not to have hung up the phone. Furthermore, he recognized in his brief that the key distinction between civil and criminal punishment is whether the penalty imposed is absolute or conditional, and all the punishments imposed were absolute. Even without specifying the contempt was criminal, it was plain from the order, so the notice requirement was met.

Relying on *American Airlines*, O'Dwyer argues that another judge should have been called to hear the issue of contempt. A trial judge should step aside to allow another judge to handle contempt charges where the trial judge has become too personally embroiled with the contemnor, *Farmer*, 652 F.2d at 438-39,because problems arise where a judge becomes "embroiled in intemperate wrangling with petitioner," *Ungar v. Sarafite*, 376 U.S. 575, 585 (1964). Judges are therefore cautioned against "vent[ing] personal spleen or respond[ing] to a personal grievance." *Offutt v. United States*, 348 U.S. 11, 14 (1954).

The only instance on the record that O'Dwyer points to to show such wrangling is where the judge said "not in this case" four times. That may show some degree of frustration, but it does not reach the level of a heated exchange between the contemnor and the judge that casts a cloud on the judge's impartiality. *Compare Cooke v. United States*, 267 U.S. 517 (1925).

Moreover, the insults to the judge made in response to the order to show cause do not warrant changing judges. "A judge cannot be driven out of a case." *Mayberry v. Pennsylvania*, 400 U.S. 455, 463 (1971). Requiring a judge to hand off contempt proceedings any time a party chose to insult him would give liti-

gants an incentive to insult any judges who threatened contempt in hopes of getting one more favorable. Allowing parties to force a change of judge where summary contempt must be used to restore order and dignity to the court would result in additional delays when time is of the essence, greatly hampering the effectiveness of that power.

O'Dwyer's outburst required immediate action, he was given the required notice and a chance to respond, and the judge was not required to hand the contempt matter to another judge. Thus, the court properly used summary contempt to require O'Dwyer to apologize, pay a fine, and seek anger management.

### B.

When O'Dwyer defied the order of contempt, refusing to apologize, pay the fine, or get anger management counseling, the district court struck his answer, saying that this was based on the Rule 16 conference supplemented by O'Dwyer's later actions. If the contempt power was being used to punish O'Dwyer further, he should have faced new charges of contempt. Because there was no notice or hearing, and summary contempt was inapplicable, something besides the contempt power must justify striking the pleadings.[8] Ocean-Oil finds support in the inherent power of the court to control parties and cases before it.

Striking a pleading is within those inherent powers. *Smith v. Legg (In re United Mkts. Int'l, Inc.)*, 24 F.3d 650, 654 (5th Cir. 1994). That extreme sanction of striking an answer, however, can be used only where there is bad faith or wilful abuse of the judicial process. *Id.* A party shows bad faith "by 'delaying or disrupting the litigation or hampering enforcement of a court order.'" *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (quoting *Hutto v.*

---

[8] The conduct at issue was O'Dwyer's refusal to obey the order. The refusal does not occur in the court's actual presence. He did not refuse during open court, but rather by written submission. His refusal to engage in certain out-of-court behaviors is not something the judge saw or heard, so the requirements for summary contempt are not satisfied.

*Finney*, 473 U.S. 678, 689 n.14 (1978)). A similar showing is required for bad faith here.[9]

O'Dwyer hung up the phone during a scheduling conference after yelling "screw you" at the court. Refusing to finish scheduling is the kind of behavior that causes delays in proceedings. Although O'Dwyer protests that no delay resulted from his actions because he and opposing counsel had already said the month of October was okay for the pretrial and trial dates, that is insufficient. First, no dates had been set, and the court was asking for specific dates when O'Dwyer's requests to make objections began. O'Dwyer's only statement regarding his schedule was when, during a discussion of whether October worked, he said, "we're okay." The court and Ocean-Oil could not know, from that, whether any given dates they selected would work for O'Dwyer.

Eventually, the court set the date with Ocean-Oil alone after O'Dwyer hung up, determining that O'Dwyer had waived his right to contribute to date selection. The decision to proceed without O'Dwyer's input to avoid further delay in this already-delayed matter does not relieve O'Dwyer from sanctions for his refusal to complete scheduling. Furthermore, the disrespectful conduct during the conference and in repeated filings thereafter disrupted proceedings and caused further delays; the court was forced to take time from the case to restore order and maintain the dignity and authority of the court.

O'Dwyer also engaged in bad faith and wilful abuse of the judicial process by using filings and other court communications to attack the judge personally and repeatedly in ways unrelated to the matter the filings regard. O'Dwyer's response to the order to show cause called the judge incompetent, corrupt, said

---

[9] *Lubrizol Corp. v. Exxon Corp.*, 957 F.2d 1302, 1307-09 (5th Cir. 1992) (per curiam) (affirming decision to consider one party's affidavits uncontradicted as a sanction for the other party's repeated delays and failure to file court-ordered submissions); *United Mkts.,* 24 F.3d at 654 (striking pleadings as a sanction for failure to pay previously ordered sanctions against a party who repeatedly filed unsubstantiated claims); *cf. Holden v. Simpson Paper Co.*, 48 F. App'x 917(5th Cir. 2002) (dismissing plaintiff's suit for failure to comply with repeated orders to pay sanctions) (citing *Martinez v. Johnson*, 104 F.3d 769 (1997)).

he never should have been confirmed, and declared him "worthy of the contempt of *all* United States citizens . . . and unworthy of the respect of educated, free men." O'Dwyer's response to the contempt order included racial slurs, that he is filing judicial misconduct against the judge in this case and his disciplinary case, and again says "screw you" to the district judge. Those comments, along with others made by O'Dwyer throughout those filings, do not address in any way the merits of the court document to which the purported response was made and have no place in filings to the court.

O'Dwyer's belief that his actions were justified and that the district court had no power to punish him (suggested by his declaration that he was owed, rather than owed anyone else, an apology and in his repeated demands that the judge recuse) does not justify his actions in disregarding the contempt order. As this court stated in *Beauregard, Inc. v. Sword Services L.L.C.*, 107 F.3d 351, 354 (1997),  O'Dwyer's "honest belief that the order was erroneous[] made [his] refusal no less 'willful,' and [he] was specifically warned that dismissal would be the sanction."

The above facts demonstrate an egregious pattern of conduct that disrupted the proceedings and evinced a complete lack of respect for the dignity and authority of the district court. Although the striking of pleadings is an extreme sanction, O'Dwyer engaged in bad faith and wilful abuse of the judicial process. Accordingly, the striking of his answer under the court's inherent powers was not an abuse of discretion.

AFFIRMED.