**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 12, 2012

Lyle W. Cayce
Clerk

No. 11-41118

FANNIE GARCIA

Plaintiff-Appellant

v.

CITY OF LAREDO, TEXAS, A Home Rule City; CARLOS MALDONADO, Chief of the City of Laredo, TX Police Department, Individually and in His Official Capacity; CYNTHIA COLLAZO, Deputy City Manager of the City of Laredo, TX, Individually and in Her Official Capacity; GILBERT NAVARRO, Former Interim/Acting Chief of the Police Department of the City of Laredo, TX, Individually and in His Official Capacity; GILBERT MAGANA, Investigator, Internal Affairs Division of the Police Department of the City of Laredo, TX, Individually and in His Official Capacity;  STEVEN MONCEVAIS, Crime Scene Unit Investigator of the Police Department of the City of Laredo, TX, Individually and in His Official Capacity; RAQUEL BUENROSTRO, Conspirator,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, JONES, and SMITH, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In this appeal, Plaintiff-Appellant Fannie Garcia ("Garcia") contends the district court's interpretation of the Stored Communications Act was erroneous. Garcia alleges that the statute applies and protects all text and data stored on

No. 11-41118

her personal cell phone which the Defendants accessed without Garcia's permission. We conclude that the Stored Communications Act, which prohibits accessing without authorization a facility through which an electronic communication service is provided and thereby obtaining access to an electronic communication while it is in electronic storage, does not apply to data stored in a personal cell phone. For the reasons more fully set forth below, we AFFIRM.

I.

Garcia, a former police dispatcher for the City of Laredo, claims Defendants accessed the contents of her cell phone without permission in violation of the Stored Communications Act. On November 15, 2008, a police officer's wife removed Garcia's cell phone from an unlocked locker in a substation of the Laredo Police Department, and she accessed text messages and images found on Garcia's phone. Believing she had discovered evidence of violations of a department policy, she then set up a meeting with Cynthia Collazo, the deputy assistant city manager, and Gilbert Navarro, the interim /assistant police chief. At the meeting, she utilized Garcia's cell phone to access and to share with Collazo and Navarro the text messages sent from and received by the phone and the photographs stored on the phone. Later, investigators Gilbert Magaña and Steven Moncevais successfully downloaded one video recording and thirty-two digital images from the cell phone; they were unable to download any of the text messages.

A subsequent internal investigation concluded, based in whole or in part upon images and text messages retrieved from her cell phone, that Garcia had

No. 11-41118

violated police department rules and regulations and Garcia was terminated from her employment.

The district court granted summary judgment for Defendants and denied Garica's motion for partial summary judgment on the Stored Communications Act, finding that the statute did not apply to Defendants' actions in this case.[1] We affirm.

## II.

We review summary judgment rulings *de novo*. *Rockwell v. Brown*, 664 F.3d 985, 990 (5th Cir. 2011). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A question of statutory interpretation is reviewed *de novo*. *Matthews v. Remington Arms Co.*, 641 F.3d 635, 641 (5th Cir. 2011).

## III.

Garcia first argues that the district court erred in granting summary judgment for Defendants because the Stored Communications Act ("SCA") protects all text and data stored on Garcia's cell phone which Defendants

---

[1] On September 1, 2011, the district court granted Defendants' summary judgment in part but denied summary judgment for the Defendants "on the procedural due course claim related to Garcia's cell phone" and denied summary judgement "as it relates to any other due course claim." On September 26, 2011, the district court, at the request of the parties, entered a final judgment dismissing the single remaining claim without prejudice.

No. 11-41118

accessed without her consent.[2]   Defendants argue the SCA does not apply to images and text messages accessed from and stored in an ordinary cell phone.

Prior to 1986, the United States Code provided no protection for stored communications in remote computing operations and large data banks that stored e-mails. *United States v. Councilman*, 418 F.3d 67, 80-81 (1st Cir. 2005) (en banc).  In response, Congress passed the SCA as part of the Electronic Communications Privacy Act to protect potential intrusions on individual privacy that the Fourth Amendment did not address. *Id.* at 81 (citing S. REP. No. 99-541, at 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3557); Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 GEO. WASH. L. REV. 1208, 1209-13 (2004). The SCA prohibits unauthorized access to wire and electronic communications in temporary and back-up storage and provides in relevant part:

> [W]hoever–
>
> (1) intentionally accesses without authorization a *facility* through which an *electronic communication service* is provided; or
>
> (2) intentionally exceeds an authorization to access that facility;
>
> and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in *electronic storage* in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2701(a) (2006) (emphasis added). Accordingly, for Defendants to be liable under the SCA, they must have gained unauthorized access to a facility

---

[2] While Garcia argued violations of the Fourth Amendment, the SCA, and the Texas Constitution and alleged an invasion of privacy tort before the district court, she raises only an alleged violation of the SCA in her appeal.

No. 11-41118

through which electronic communication services are provided (or the access must have exceeded the scope of authority given) and must thereby have accessed electronic communications while in storage. Garcia argues that her personal cell phone is a "facility" in which electronic communication is kept in electronic storage in the form of text messages and pictures stored on the cell phone.[3]

While the SCA does not define the term "facility," it does define the terms "electronic communication service" and "electronic storage." The statute defines an "electronic communication service" ("ECS ") as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. §2510(15) (incorporated by reference in 18 U.S.C. §2711(1) of the SCA). "Electronic storage" is defined as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." *Id.* §2510(17).

Courts have interpreted the statute to apply to providers of a communication service such as telephone companies, Internet or e-mail service providers, and bulletin board services. For example, in *Steve Jackson Games, Inc. v. United States Secret Service*, we found that the SCA applied to cover the seizure of a computer used to operate an electronic bulletin board system. 36

---

[3] Garcia relies almost exclusively on the dictionary definition of "facilities": "[that] which promotes the ease of any action, operations, transaction or course of conduct," to support her argument. BLACK'S LAW DICTIONARY 705 (4th ed. 1951).

No. 11-41118

F.3d 457, 462-63 (5th Cir. 1994).[4] Other circuits have applied the SCA to Internet service providers. *See, e.g.*, *Councilman*, 418 F.3d at 81-82; *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004).

These cases, however, are not helpful to Garcia in establishing that an individual's computer, laptop, or mobile device fits the statutory definition of a "facility through which an electronic communication service is provided." The Eleventh Circuit's decision in *United States v. Steiger* provides useful guidance. 318 F.3d 1039, 1049 (11th Cir. 2003). In *Steiger*, when a hacker accessed an individual's computer and obtained information saved to his hard drive, the court held such conduct was beyond the reach of the SCA. *Id.* The court found that "the SCA clearly applies . . . to information stored with a phone company, Internet Service Provider (ISP), or electronic bulletin board system," but does not, however, "appear to apply to the source's hacking into Steiger's computer to download images and identifying information stored on his hard-drive." *Id.* It noted that "the SCA may apply to the extent the source accessed and retrieved any information *stored with Steiger's Internet service provider*." *Id.* (emphasis added).

A number of district courts that have considered this question have also concluded that "the relevant 'facilities' that the SCA is designed to protect are not computers that *enable* the use of an electronic communication service, but instead are facilities that are *operated by* electronic communication service providers and used to store and maintain electronic storage." *Freedom Banc*

---

[4] The bulletin board system allowed Steve Jackson Games to post public information about its business, facilitate testing of games being developed, and communicate with its 365 users via e-mail. It contained users' private e-mails which had been stored on the bulletin board but had not yet been read by intended recipients. *Id.* at 458.

No. 11-41118

*Mortg. Servs., Inc. v. O'Harra*, No. 2:11-cv-01073, 2012 WL 3862209, at *9 (S. D. Ohio Sept. 5, 2012) (emphasis added). Recently, the Northern District of California held that a class of iPhone plaintiffs had no claim under the SCA because their iPhones did not "constitute 'facilit[ies] through which an electronic communication service is provided.'" *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1057-58 (N.D. Cal. 2012).[5]

Thus these courts agree that a "home computer of an end user is not protected by the SCA." Kerr, *supra*, at 1215 (footnote omitted). As explained by Orin Kerr in his widely cited law review article, the words of the statute were carefully chosen: "[T]he statute envisions a *provider* (the ISP or other network service provider) and a *user* (the individual with an account with the provider), with the *user's communications in the possession of the provider*." *Id.* at 1215 n.47 (emphasis added) (citation omitted).

This reading of the statute is consistent with legislative history, as "Sen. Rep. No. 99-541 (1986)'s entire discussion of [the SCA] deals only with facilities operated by electronic communications services such as 'electronic bulletin boards' and 'computer mail facilit[ies],' and the risk that communications temporarily stored in these facilities could be accessed by hackers. It makes no mention of individual users' computers . . . ." *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 512 (S.D.N.Y. 2001) (quoting S. REP. No. 99-541, at 36, *reprinted in* 1986 U.S.C.C.A.N. 3555, 3590).

---

[5] *See also Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1271 (N.D. Cal. 2001) ("[The argument that] computers of users of electronic communication service, as opposed to providers of electronic communication service, are considered facilities through which such service is provided [is] destined to failure.").

No. 11-41118

Even if Garcia's cell phone were somehow considered a "facility," this stops short of demonstrating that storage of text messages and pictures on Garcia's cell phone fits within 18 U.S.C. §2510(17)'s definition of "electronic storage." "Electronic storage" as defined encompasses only the information that has been stored by an electronic communication service provider. *Id.* Thus, information that an Internet provider stores to its servers or information stored with a telephone company—if such information is stored temporarily pending delivery or for purposes of backup protection—are examples of protected electronic storage under the statute. But information that an individual stores to his hard drive or cell phone is not in electronic storage under the statute. *Freedom Banc*, 2012 WL 3862209, at *8-9; *see Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1205 (S.D. Cal. 2008) ("E-mails stored on the laptop computer are not in 'temporary, intermediate storage' [as required by §2510(17)(A)]. Furthermore, the e-mails on the laptop are not stored 'by an electronic communication service for purposes of backup protection' as required by subsection (B)."); *Bailey v. Bailey*, No. 07-11672, 2008 WL 324156, at *6 (E.D. Mich. Feb. 6, 2008) (unpublished) ("Stored Communications Act protection does not extend to emails and messages stored only on Plaintiff's personal computer.").

An individual's personal cell phone does not *provide* an electronic communication service just because the device *enables* use of electronic communication services, and there is no evidence here that the Defendants ever obtained any information from the cellular company or network. Accordingly, the text messages and photos stored on Garcia's phone are not in "electronic storage" as defined by the SCA and are thus outside the scope of the statute.

No. 11-41118

IV.

Garcia also argues that the district court erred in denying her Motion to Recuse United States District Judge Micaela Alvarez. Garcia's counsel criticizes Judge Alvarez for not ruling on an application for expedited preliminary injunctive relief, admonishing him after he contacted chambers ex parte, striking Plaintiff's late Motion for Summary Judgment, and attributing the granting of Defendants' Motion for Summary Judgment to counsel's lack of skills.

Under 28 U.S.C. § 455(a), a judge of the United States is required to recuse himself "in any proceeding in which his impartiality might reasonably be questioned." We review the denial of a recusal motion for abuse of discretion. *Trevino v. Johnson*, 168 F.3d 173, 178 (5th Cir. 1999). A "judge abuses his discretion in denying recusal where a reasonable man, cognizant of the relevant circumstances surrounding [the] judge's failure to recuse, would harbor legitimate doubts about that judge's impartiality." *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003) (internal quotation marks omitted).

When viewed objectively, we find no facts in this record to cause a reasonable person to doubt Judge Alvarez's impartiality. It is undisputed that Garcia's Motion for Summary Judgment was filed late, and Judge Alvarez nevertheless permitted Garcia to file the motion. There is also no question that Garcia's counsel contacted Judge Alvarez's chambers ex parte, and that is the reason Judge Alvarez admonished him. Although Judge Alvarez's order stated that the "poor legal representation" by Garcia's counsel "stretched the Court's patience to the limits," this does not support Garcia's allegation that Judge Alvarez granted Defendants' summary judgment motion because of the quality

9

No. 11-41118

of Garcia's representation. Finally, while the district court acknowledged that its failure to promptly rule on Garcia's motion for preliminary injunctive relief was "regrettable," such failure was due to scheduling issues and from a reasonable observer's perspective would not cast doubt on the judge's impartiality.

Further, as this court stated in *Wang v. Holder*, "The [Supreme] Court made quite clear [that] displays of temper will not suffice: '*Not* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display,'" and much of what Garcia's counsel complains of falls into this category. 569 F.3d 531, 540-41 (5th Cir. 2009) (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)). Thus neither 28 U.S.C. § 455(a) nor due process required recusal in this case.

V.

For the above reasons, the judgment of the district court is AFFIRMED.