# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-30971

United States Court of Appeals
Fifth Circuit

**FILED**

May 21, 2015

Lyle W. Cayce
Clerk

In the Matter of:  ASHTON R. O'DWYER, JR.,

Debtor

------------------------------

ASHTON R. O'DWYER, JR.,

Appellant

v.

MICHAEL P. O'DWYER; LOWEN CLAUSEN,

Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:14-CV-1681

Before HIGGINBOTHAM, DAVIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Appellant Ashton R. O'Dwyer, Jr. ("Debtor"), appearing *pro se*, appeals

the bankruptcy court's order authorizing the chapter 7 trustee to sell any and

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30971

all of Debtor's fractional interest in certain batture property in Jefferson Parish, Louisiana (the "Property") to Debtor's brother, Appellee Michael O'Dwyer ("Purchaser"). The district court rejected Debtor's appeal. He now asks us to set the sale aside. Also before the court is Debtor's motion to supplement the appellate record, which Debtor incorporated into his appellate brief.

Because section 363(m) of the Bankruptcy Code[1] moots this appeal, we must dismiss it. We also deny O'Dwyer's motion to supplement the record as moot.

I.

Debtor filed a voluntary petition for bankruptcy under Chapter 11 of the Code in August 2009. Debtor did not list any interest in the Property on Schedule A of his bankruptcy petition.[2] Instead, on his amended Schedule B,[3] he listed a pending suit seeking various forms of relief, including monetary damages and a prayer to quiet title, against certain defendants who are allegedly squatting on the Property. Debtor's amended Schedule B contains no substantive description of that lawsuit; it merely lists "THE O'DWYER FAMILY BATTURE CASE (NUMBER UNKNOWN)" amongst a lengthy series of case numbers representing Debtor's sundry lawsuits against numerous entities.

In May 2010, the bankruptcy court converted Debtor's case to a liquidation under Chapter 7 of the Code and ordered the United States Trustee's Office to appoint a trustee to administer the bankruptcy estate. The

---

[1] 11 U.S.C. §§ 101-1532 (the "Code").

[2] Schedule A requires the debtor to list all real property in which the debtor has any legal, equitable, or future interest.

[3] Schedule B requires the debtor to list all personal property of any kind, including "contingent and unliquidated claims of any nature."

2

trustee subsequently disclaimed any interest in the contingent claims in the batture lawsuit, as well as the other litigation listed on Debtor's Schedule B, as "unworthy of administration." The bankruptcy court granted Debtor a discharge and ultimately closed the case in November 2013.

In May 2014, Purchaser moved to reopen the case. Purchaser wanted to buy Debtor's interest in the Property, and accordingly requested that the bankruptcy court reappoint a trustee to administer the previously undisclosed asset. The court granted Purchaser's motion. The trustee then moved to sell Debtor's interest in the Property free and clear of liens pursuant to Code § 363(b) and (f).[4]

Over Debtor's objection, the bankruptcy court auctioned off Debtor's interest in the Property in open court. Purchaser and Appellee Lowen Clausen ("Clausen") were the only bidders. Purchaser won the auction, and the bankruptcy court accordingly ordered the trustee to sell Debtor's interest in the Property to Purchaser for $10,400.00, "with no warranties whatsoever, even as to title." The court further ordered that, should Purchaser fail to complete the purchase of the Property within fourteen days, the trustee would instead sell Debtor's interest to Clausen for $9,400.00, again "with no warranties whatsoever, even as to title."

On June 26, 2014, Debtor filed a motion to stay the sale pending appeal. The bankruptcy court noticed that motion for a hearing on August 6, 2014. After Debtor filed the motion, but before the bankruptcy court posted the motion on the public docket, Purchaser and the trustee consummated the sale

---

[4] Section 363(b) authorizes the trustee to sell property of the estate outside the ordinary course of business after notice and a hearing. Section 363(f) permits the trustee to sell estate property "free and clear of any interest in such property of an entity other than the estate" if certain prerequisites are met.

No. 14-30971

and filed a record of the sale with the conveyance office of the Parish of Jefferson, State of Louisiana.

Debtor then moved to appeal the sale order to the district court. The district court had previously barred Debtor from filing any pleadings or documents in the district court without first obtaining the court's permission and paying all outstanding monetary sanctions against him. Because Debtor had failed to pay the sanctions, the district court denied Debtor's motion to appeal.

In response to the district court's order, the bankruptcy court cancelled the scheduled hearing on Debtor's motion to stay. Neither the bankruptcy court nor the district court ever granted Debtor a stay.

Debtor now asks us to set the sale aside. He argues that (1) the bankruptcy court erroneously concluded that he had failed to properly disclose his interest in the Property on his bankruptcy schedules; (2) the trustee could not administer the Property after the bankruptcy court reopened the case because he had disclaimed any interest in the Property; (3) the court should have ordered an appraiser to value the Property before conducting the auction; and (4) the court's failure to adequately advertise the auction resulted in a grossly inadequate sales price. Debtor also contends that the bankruptcy judge should have recused himself in the case. Finally, Debtor moves to supplement the appellate record.

II.

We first address Debtor's argument that the bankruptcy judge assigned to the case, the Honorable Jerry A. Brown, should have recused himself. Debtor advances numerous reasons why he believes Judge Brown could not have treated him fairly and impartially. First, Debtor has sued every district court judge in the Eastern District of Louisiana, as well as the husband of the other

4

bankruptcy judge in the Eastern District. Debtor has also filed judicial misconduct complaints against at least two district judges. Although, as far as we are aware, Debtor has not yet sued or filed a complaint against Judge Brown, Debtor claims that, "given human nature, Brown would be biased and prejudiced to rule against an individual who had deigned to sue Brown's 'brothers and sisters' on the Federal Bench."

Second, Debtor argues that Judge Brown "demonstrate[d] actual bias, prejudice, and hatred of Debtor" by enforcing the district court's order barring him from access to the federal courthouse "except pursuant to a written order of U.S. Bankruptcy Judge Jerry A. Brown, certifying that the Court deems O'Dwyer's presence necessary or desirable for the conduct of proceedings in his bankruptcy case." The district court issued this order after Debtor mailed the Honorable Ivan L. R. Lemelle a handwritten note "contain[ing] profanity and an outrageous racial slur directed at Judge Lemelle, along with an invitation that if Judge Lemelle wanted to do anything about this 'you know where I live.'"

Third, Debtor argues that Judge Brown "demonstrated bias and prejudice" by "routinely striking Debtor's pleadings or portions thereof" on the grounds that they contained content that Judge Brown deemed scandalous and defamatory.

Finally, Debtor believes that Judge Brown was "obvious[ly] complicit[]" in having Debtor arrested by the FBI" after Debtor allegedly sent a threatening e-mail to a bankruptcy court employee. This e-mail, which Debtor directed at Judge Brown, allegedly included the phrase "Given the recent 'security breach' at [the courthouse], a number of scoundrels might be at risk if I DO become homicidal." In response, the Government charged Debtor with the crime of transmitting threats in interstate commerce. The court ultimately dismissed

No. 14-30971

that indictment because Debtor's message did not constitute a true threat as a matter of law, and was therefore entitled to First Amendment protection.[5]

"We review the denial of a recusal motion for abuse of discretion."[6] "A judge abuses his discretion in denying recusal where a reasonable man, cognizant of the relevant circumstances surrounding the judge's failure to recuse, would harbor legitimate doubts about that judge's impartiality."[7]

After reviewing the parties' arguments, the record, and the applicable case law, we conclude that Judge Brown did not abuse his discretion by declining to recuse himself. As we explained in a different case involving a similar recusal motion that Debtor filed against Judge Lemelle,

> Suing all the judges in a district indiscriminately . . . does not force their recusal. Judges are not required to recuse just because they have been or are involved in litigation with a party. Otherwise, parties could control which judges hear their case by filing lawsuits against all judges of whom they disapproved. Courts must take care to ensure that motions for recusal are not abused as a litigation tactic. O'Dwyer sued all active judges in the district after independent counsel was not appointed to investigate the matter of his disciplinary hearing in an attempt to force appointment of such counsel. Such a generalized suit against all the judges cannot require their recusal, both because it is not likely to succeed and because the judges do not stand to suffer negative repercussions where the only relief sought is to have independent counsel appointed.[8]

---

[5] *See United States v. O'Dwyer*, 443 F. App'x 18, 19-20 (5th Cir. 2011).

[6] *Garcia v. City of Laredo, Tex.*, 702 F.3d 788, 793-94 (5th Cir. 2012) (citing *Trevino v. Johnson*, 168 F.3d 173, 178 (5th Cir. 1999)).

[7] *Id.* at 794 (brackets and internal quotation marks omitted) (quoting *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003)).

[8] *Ocean-Oil Expert Witness, Inc. v. O'Dwyer*, 451 F. App'x 324, 329 (5th Cir. 2011) (internal citations omitted).

No. 14-30971

Here, too, granting Debtor's motion to recuse would have rewarded Debtor for his own obstreperousness.[9] Judge Brown therefore did not abuse his discretion here.

Furthermore, we have reviewed the entire record and have found no evidence of bias. Judge Brown's orders striking scurrilous allegations from Debtor's pleadings, which in any event were irrelevant to the merits of the bankruptcy case, were entirely appropriate. Moreover, Judge Brown routinely granted Debtor permission to enter the courthouse for hearings in the bankruptcy case, and the transcripts of those hearings demonstrate that Judge Brown gave full consideration to Debtor's legal arguments throughout the bankruptcy case.

## III.

We next conclude that Code § 363(m) renders this appeal moot. As a result, we may not reach the merits of Debtor's challenges to the sale. Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

"Section 363(m) patently protects, from later modification on appeal, an authorized sale where the purchaser acted in good faith and the sale was not stayed pending appeal."[10]

> The section codifies Congress's strong preference for finality and efficiency in the bankruptcy context, particularly where third

---

[9] *See id.* at 328-30.

[10] *Gilchrist v. Westcott (In re Gilchrist)*, 891 F.2d 559, 560 (5th Cir. 1990).

parties are involved. By providing good faith purchasers with a final order and removing the risks of endless litigation over ownership, Section 363(m) allows bidders to offer fair value for estate property, which greatly benefits both the debtor and its creditors.[11]

Accordingly, "[w]e have interpreted this section to moot an appeal in the absence of a stay."[12] We therefore "have no jurisdiction to review an unstayed sale order once the sale occurs, except on the limited issue of whether the sale was made to a good faith purchaser."[13]

This is fatal to Debtor's appeal. The trustee sold Debtor's interest in the Property pursuant to Code § 363(b). Neither the bankruptcy court nor the district court stayed the sale pending appeal. The trustee and Purchaser consummated the sale and filed a record of the sale with the conveyance office. Therefore, section 363(m) deprives us of jurisdiction over Debtor's appeal unless Purchaser did not act in good faith.[14]

> In the context of § 363(m), we have defined the term ["good faith"] in two ways. On the one hand, we have defined a "good faith purchaser" as "one who purchases the assets for value, in good faith, and without notice of adverse claims." On the other hand, we have noted that "the misconduct that would destroy a purchaser's good faith status . . . involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of the other bidders."[15]

---

[11] *Newco Energy v. Energytec, Inc. (In re Energytec, Inc.)*, 739 F.3d 215, 218-19 (5th Cir. 2013) (internal citations and quotation marks omitted).

[12] *Gilchrist*, 891 F.2d at 560 (citing *Bleaufontaine, Inc. v. Roland Int'l (In re Bleaufontaine, Inc.)*, 634 F.2d 1383, 1389-90 (5th Cir. 1981)).

[13] *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 105 F.3d 837, 838 (2d Cir. 1997).

To be clear, the fact that we lack jurisdiction over the appeal has no bearing on whether the bankruptcy court possessed jurisdiction to enter the sale order. Indeed, we have held that § 363(m) bars us from examining whether the bankruptcy court lacked subject matter jurisdiction to authorize the sale in the first place. *See Gilchrist*, 891 F.2d at 560-61 (citing *In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986)).

[14] *See Gucci*, 105 F.3d at 838.

[15] *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 521 (5th Cir. 2014) (internal citations omitted).

No. 14-30971

"[S]imply having knowledge that there are objections to the transaction" is not tantamount to "having knowledge of an adverse claim."[16] "The proponent of 'good faith' bears the burden of proof."[17]

Purchaser has satisfied that burden here. We have reviewed the record in its entirety and have found no evidence that Purchaser acted with anything other than good faith. Purchaser and Clausen engaged in a competitive bidding procedure that increased the sales price to almost seven times the amount of Purchaser's initial offer to the trustee for the Property. Debtor claims that Purchaser colluded with the trustee to purchase Debtor's interest in the Property at an artificially deflated price, but his assertions are based either on unsubstantiated allegations or on facts that have no relevance to the good faith factors we articulated in *TMT Procurement Corp.*

Moreover, even assuming *arguendo* that Purchaser did not purchase the Property in good faith, Debtor is precluded from raising the issue at this stage of the proceedings. A party may not challenge a purchaser's good faith status under § 363(m) for the first time on appeal.[18] Debtor did not challenge Purchaser's good faith in the bankruptcy court or the district court. Indeed, he did not directly raise this issue until he filed his reply brief on appeal.

As a result, Code § 363(m) moots Debtor's appeal. We therefore dismiss the appeal and allow the sale order to stand. Because we do not reach the merits of Debtor's challenges, we deny Debtor's motion to supplement the record as moot.

APPEAL DISMISSED. Debtor's Incorporated Motion to Supplement Record is DENIED as MOOT.

---

[16] *Id.* at 522.

[17] *Id.* at 520 (citing *In re M Capital Corp.*, 290 B.R. 743, 747 (9th Cir. B.A.P. 2003)).

[18] *Schum v. Zwirn Special Opportunities Fund LP (In re Watch Ltd.)*, 295 F. App'x 647, 650 (5th Cir. 2008) (per curiam) (citations omitted).